**Affirmed and Memorandum Opinion filed July 25, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00365-CR

**DANIEL EARL CULP, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 10th District Court**
**Galveston County**
**Trial Court Cause No. 11CR2157**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Daniel Earl Culp of possession with intent to deliver cocaine. Culp appeals, arguing (1) the evidence is insufficient to support his conviction and (2) he received ineffective assistance of counsel at trial. We affirm.

# I

On July 26, 2011, Officer Shawn Lozica of the Galveston County Sheriff's Department obtained a combination search-and-arrest warrant, which authorized the arrest of Culp and the search of the mobile home located at 4210 Darby Street in Bacliff. The warrant also authorized the seizure of "cocaine, and any and all implements, materials, paraphernalia, supplies, monies, lists, and other items that relate to and not limited to violations" of the Texas Controlled Substances Act. *See* Tex. Health & Safety Code ch. 481. Lozica and several other officers executed the warrant the following day.

At trial, Lozica explained that because it was a no-knock search warrant, he broke in the front door of the mobile home without knocking and announcing himself. The officers then entered through the front door into the kitchen, where they found Culp. Melissa Espitia, her and Culp's young daughter, and another adult were in the living room, which was separated from the kitchen by a floor-to-ceiling partition. Several officers escorted the occupants out of the mobile home and searched them. Culp had $510 in cash on his person and was the only one carrying a large amount of cash.

Once the occupants were secured, Lozica and his fellow officers searched the inside of the home. They quickly found a lease for 4210 Darby Street in Culp's and Espitia's names on top of a desk in the kitchen. In one of the desk drawers, the officers found 10.2 grams of cocaine,[1] a digital scale, and a razor blade. Some of the cocaine had been cut into small chunks that weighed approximately .2 ounces each. Based on his training and experience as an undercover officer, Lozica

---

[1] This weight included packaging. The forensic scientist who later received the narcotics at the Texas Department of Public Safety Crime Lab confirmed that the substance was cocaine and determined that it weighed 6.01 grams without packaging.

testified that .2-ounce chunks are typically sold for personal use and cost about $20 each. Because of the amount of cocaine he found, the way some of it had already been cut up into smaller pieces, the scale, and the razor blade, Lozica concluded that the narcotics were for distribution rather than for personal use.

After the State's case-in-chief, Culp testified on his own behalf and denied that the cocaine belonged to him. He claimed that the desk was Espitia's, that the cash he was carrying at the time of his arrest was his and Espitia's rent money, and that he had earned his portion of that money doing tattoo work and other odd jobs. He also testified that he had moved out of the mobile home several weeks before his arrest because he and Espitia were having relationship problems. He explainted that, during that time, he lived with a friend in Dickinson, but he still did tattoo work out of the mobile home, kept clothes and other personal items there, and continued to contribute to the rent. He also acknowledged that he spent two to three nights per week there.

The jury convicted Culp of possession with the intent to deliver a controlled substance—namely, cocaine—in an amount no less than four grams and no more than two hundred grams. The trial court assessed his punishment at seven years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. This appeal followed.

## II

In his first issue, Culp argues the evidence is legally insufficient to prove, beyond a reasonable doubt, that he knowingly possessed the cocaine, emphasizing the fact that mere presence at the location where the drugs are found is insufficient to prove possession.

In a legal-sufficiency review, we consider all of the evidence in the light

most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360. We permit juries to draw multiple reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Jackson*, 443 U.S. at 319; *Temple*, 390 S.W.3d at 360. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Temple*, 390 S.W.3d at 360.

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In circumstantial-evidence cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt. *Temple*, 390 S.W.3d at 359. "[I]t is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

To obtain a conviction for unlawful possession of a controlled substance, the State must prove that the defendant (1) exercised care, custody, control or management over the contraband, and (2) knew that the substance possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006). Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Id.* at 162. In analyzing the issue, we look to a non-exclusive list of relevant factors that may link a defendant to

contraband so as to establish possession. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The factors that apply here include: (1) whether the defendant was present when the search was conducted, (2) the defendant's proximity to and the accessibility of the narcotic, (3) whether other contraband or drug paraphernalia were present, (4) whether the defendant owned or had the right to possess the place where the drugs were found, (5) whether the place where the drugs were found was enclosed, and (6) whether the defendant was found with a large amount of cash. *See id.* The number of factors that link a defendant to the narcotics is not as important as the "logical force" the factors create to prove the defendant's guilt. *Id.*; *see Evans*, 202 S.W.3d at 162.

Here, a number of factors affirmatively link Culp to the narcotics. First, he was present when the officers executed the search warrant and found the narcotics. Second, Culp was in the same room as the desk in which the cocaine was found, and the cocaine was easily accessible to him in the unlocked desk drawer. Third, there was other drug paraphernalia—the digital scale and the razor—in the same drawer as the narcotics. Fourth, Culp's name is on the lease for the mobile home, and although he claimed that he had moved out weeks before the narcotics were found, he acknowledged that he continued to contribute to the rent, leave personal items in the home, and spend a few nights a week there. Fifth, the drugs were found in an enclosed place. Sixth, Culp had $510 in cash on his person. Considering these factors in the light most favorable to the verdict, we conclude that sufficient evidence was presented to allow a rational fact finder to conclude beyond a reasonable doubt that Culp knowingly possessed the cocaine. Accordingly, we overrule his first issue.

### III

In his second issue, Culp contends that he was denied the effective

assistance of counsel at trial because his counsel failed to request a jury instruction "that mere possession was insufficient to find a person guilty."

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, the appellant must show that counsel was so deficient as to deprive the appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687. Second, the appellant must show that the deficient presentation was prejudicial and resulted in an unfair trial. *Id.* To satisfy the first prong, the appellant must show that his counsel's representation was objectively unreasonable. *Id.* at 688; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, the appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694; *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001).

Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813. The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. Trial court counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the absence of a record of trial counsel's reasons for the challenged conduct, a court will not conclude that counsel was ineffective unless "the conduct was so outrageous that no competent attorney would have

engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). For this reason, "[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813.

In this direct appeal, Culp asserts that his counsel's failure to request the instruction "was clearly ineffective assistance of counsel." But he offers no explanation as to why the challenged conduct was deficient, let alone outrageous. He similarly provides no analysis for his conclusory assertion that "[t]here is a reasonable probability that the outcome of the case would have been different had the jury been given an instruction that mere possession was not enough to find guilt." Moreover, he does not show that he would have even been entitled to such an instruction. Culp has failed to overcome the presumption that his trial counsel's conduct was within the wide range of reasonable professional assistance, and we overrule his second issue. *See Mallett*, 65 S.W.3d at 63.

* * *

We affirm the judgment of the trial court.


/s/     Jeffrey V. Brown
Justice


Panel consists of Justices Frost, Brown, and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).

7